Jesse E. TEAGUE, Deceased, by Mary G. Teague, Appellant,

v.

SOUTH CENTRAL BELL and Workmen's Compensation Board, Appellees.

Court of Appeals of Kentucky.

April 13, 1979.

Discretionary Review Denied Sept. 11, 1979.

W. Fletcher McMurry Schrock, McMurry & Livingston, Paducah, for appellant.

Samuel S. Boaz, Paducah, for appellee, South Central Bell Tel. Co.

Before WHITE, GANT and WILHOIT, JJ.

WHITE, Judge.

This is an appeal from the McCracken Circuit Court affirming the Workmen's Compensation Board's dismissal of appellant's claim.

Three issues were contested before the Board and appellant now seeks their review by this court. The issues raised are (i) whether a work-related injury occurred, (ii) whether the injury caused death and (iii) whether the deceased failed to follow competent medical advice.

Appellant, Mary Teague, petitioned the Board for benefits as a result of the death of her husband, an employee of appellee, South Central Bell. Appellant contends that the deceased twisted his ankle sometime during work on August 6, 1974. Mr. Teague's supervisor testified that Teague had complained he had turned his ankle alighting from his car when going to work. Teague's treating physician testified that in taking a history from Teague on August 13, 1974, he related that he had turned his ankle at work a few days before. Appellant claims Teague suffered thrombophlebitis as a result of this injury, which created a pulmonary embolus causing Teague's death.

Three medical experts testified in this case—Teague's treating physician Dr. Sloan, and Doctors Hosbach and Nightingale, who were deposed by hypothetical questions. Dr. Sloan testified that he examined Teague and diagnosed his condition as superficial thrombophlebitis. He recommended hospitalization, which Teague refused, and Dr. Sloan consented to treat Teague as an outpatient "against my better judgment." At the second examination, Dr. Sloan noted some improvement and recommended Teague continue the prescribed course of treatment. On August 25, one day prior to an appointment with Dr. Sloan, Teague died.

Mrs. Teague testified that Teague collapsed on the afternoon of the 25th, at which time she summoned an ambulance. By the time the ambulance arrived, Teague had regained consciousness but refused to be transported to the hospital at that time because he was scheduled to see his doctor again the next day. Mrs. Teague testified that she and her four children pleaded with Mr. Teague to go to the hospital, but he insisted that he felt better and would see his doctor the next day at the regular appointment. At approximately nine o'clock that evening, Teague died. It was Dr. Sloan's medical opinion that Teague died from "a massive pulmonary embolus arising from the thrombophlebitic vein."

## I

**Was the injury work related?**

KRS 342.680 offers a presumption in favor of the claimant in situations where the employee suffers an injury and subsequently dies. The statute specifically states:

> In any claim for compensation, where the employe has been killed, or is physically or mentally unable to testify . . . and where there is unrebutted prima facie evidence that indicates that the injury was work related it shall be presumed, in the absence of substantial evidence to the contrary, that the injury was work related . . . .

The evidence before the Board is consistent and unrefuted concerning decedent's injury. Mrs. Teague related that her husband had said he had turned his ankle at work. This explanation is also recorded by Teague's treating physician. Teague's supervisor testified that Teague told him he had turned the ankle in alighting from his car while going to work. It is noted that this occurred in the employer's parking lot. There is no other evidence presented as to the occurrence of the injury. All the evidence is consistent with the statutory presumption that the injury was work related.

From the evidence presented, the Board concluded that Teague sustained no work-related injury. Even though it is true that "[f]actual findings by the board, based upon substantial evidence, are conclusive and binding on the court," *Armco Steel Corporation v. Mullins*, Ky., 501 S.W.2d 261 (1973), nevertheless, here there is no substantial evidence to overcome the statutory presumption. In light of the uncontradicted evidence as to the occurrence of the injury and the presumption of KRS 342.680, we are at a loss to understand how the Board could have concluded that the injury was not work related. The Board's finding was clearly erroneous on this issue.

### II

■ Did the injury cause death?

Teague's treating physician attributed the cause of death to "a massive pulmonary embolus arising from the thrombophlebitic vein." Dr. Sloan attributed the thrombophlebitic condition to the trauma sustained when Teague twisted his ankle. Upon deposition, Dr. Sloan testified as follows:

Q. And as I understand your testimony previously, what you are stating is that as a physician for Mr. Teague, you are stating that while it is within the realm of possibility. I take that to mean that you cannot state within any degree of medical certainty that that was a cause of the condition; the related ankle turning or whatever it was?

A. No, I can't say that was a certainty, but *I'd say it is probable.* (emphasis added)

Dr. Sloan further stated by letter of June 19, 1976: "If this sequence of events, which is highly logical, is true, an injury on duty was responsible for his death."

Two other physicians, Doctors Hosbach and Nightingale, offered expert testimony by way of deposition. They were deposed following Teague's death and had never treated or examined Teague. Questions were posed hypothetically. Most of the medical testimony is conjectural and concerns the difference between deep-vein and superficial thrombophlebitis, but neither contradicts Dr. Sloan's conclusion of causal relationship. Both Dr. Hosbach and Dr. Nightingale noted that a pulmonary embolus from superficial thrombophlebitis is rare or may be remote but that such does occur.

The Board seemed to focus on the fact that the coroner, in his report, listed cause of death as coronary occlusion, and, coupled with the fact that decedent had in June 1973 complained of shortness of breath and chest pains, concluded that he had died from natural causes. Dr. Sloan testified, however, that the coroner was not a medical doctor and that a layman would often confuse a coronary occlusion with a pulmonary embolus. Furthermore, Dr. Sloan testified that Teague had no noticeable heart condition in June 1973 and an electrocardiogram showed no abnormalities.

Again we find no substantial evidence to support the Board's finding that no causal connection between injury and death existed. Under the circumstances as we have here where the treating physician was the only one to actually examine the claimant before his death, his testimony must be given the greatest weight. As treating physician, Dr. Sloan attributed a causal relation between Teague's injury and death. Doctors Hosbach and Nightingale's testimony in no way contradicts that of Dr. Sloan. A thorough reading of the evidence constrains us to conclude that the finding of the Board on this issue is also clearly erroneous.

### III

■ Did the deceased fail to follow competent medical advice?

428

KRS 342.035(2) states that "[n]o compensation shall be payable for the death or disability of an employe if his death is caused . . . by an unreasonable failure to submit to or follow any competent surgical treatment or medical aid or advice."

Dr. Sloan testified that he recommended hospitalization, which Teague refused, and therefore Dr. Sloan consented to treat Teague as an outpatient "against my better judgment." In an exhibit attached to Dr. Sloan's deposition, he stated: "He was advised to be hospitalized but he refused. He was treated with Orenzyme and Tandearil, but was not given anticoagulants which would have been done in the hospital. (The purpose of anticoagulants in phlebitis is the prevention of pulmonary embolism.)"

Whether KRS 342.035(2) bars recovery in this instance turns on the question of whether Teague's actions were reasonable in view of the knowledge he possessed concerning his injury. We note that Dr. Sloan's statements concerning a prescribed treatment of anticoagulants if Teague were hospitalized and that he treated Teague as an outpatient against his better judgment were both made subsequent to decedent's death. There is nothing in Dr. Sloan's testimony indicating that these facts were conveyed to Teague. A doctor's knowledge or assumption of probable results cannot be imputed to the patient unless the patient is so notified. There is nothing in the record indicating that Teague was ever aware of the gravity of his condition.

Mrs. Teague testified that her husband followed the advice of Dr. Sloan; i. e., he took the prescribed medication, applied heat to the injury and kept the leg elevated. No testimony in the record reveals that Teague was told that his course of treatment if hospitalized would differ from the treatment he followed at home. Teague's conduct simply contains no element of unreasonable failure to follow medical advice. In any event, the statute proscribes compensation where death is *caused by* an unreasonable failure to follow competent medical advice. In this case, there has been no

showing that Teague's refusal to go to the hospital actually caused his death. The appellees would have us deny compensation on an implication that Teague's refusal to be hospitalized caused his death. Without substantial proof offered by appellees, mere implication or supposition will not suffice.

KRS 342.035(2) provides an affirmative defense to the employer and we feel places the burden of proof of such defense upon the employer. The defense contains two elements: (i) failure to follow medical advice and (ii) that such failure was unreasonable. Neither of these elements was supported by substantial evidence. In light of the testimony given, and under KRS 342.680, we find the Board was clearly erroneous in dismissing appellant's claim.

The judgment is reversed with instructions to the McCracken Circuit Court to remand the case to the Workmen's Compensation Board for entry of an award for appellant in conformity with this opinion.

All concur.